AMBURSEN HYDRAULIC CONST. CO. v. HYDRAULIC PROPERTIES CO.

(Circuit· Court of Appeals, Second Circuit. January 13, 1914.)

No. 104.

PATENTS (§ 328*)—VALIDITY—DAM CONSTRUCTION.
    The Ambursen reissue patent, No. 12,246 (original No. 734,796), for an improvement in dams, claims 2 and 3, are void for lack of invention as being for a dam not differing from former structures except in the substitution of concrete for other materials.

Appeal from the District Court of the United States for the Southern District of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by the Ambursen Hydraulic Construction Company against the Hydraulic Properties Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 208 Fed. 27.

On appeal from a decree of the District Court for the Southern District of New York dismissing the bill in an infringement suit based on reissued letters patent No. 12,246 granted to Nils Fredrick Ambursen for an improvement in dams. Judge Holt held the claims involved—Nos. 2 and 3—invalid for lack of invention and dismissed the bill.

Edwards, Sager & Wooster, of New York City (Alexander P. Browne and George K. Woodworth, both of Boston, Mass., of counsel), for appellant.

Hillary C. Messimer and Albert M. Austin, both of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The patent relates to improvements in the construction of dams, its principal change from the dams of the prior art being the substitution of concrete for the materials before used in dam construction. The alleged invention is sufficiently described in the claims, which are as follows: .

"2. A dam comprising a base, an inclined concrete flooring overhanging the base, a plurality of spaced buttresses interposed between the base and flooring, and metallic reinforcing members embedded in the flooring and extending lengthwise thereof and across the buttresses.

"3. A dam comprising a base, spaced buttresses rising therefrom and a relatively thin inclined concrete flooring supported by and overhanging the buttresses and base, said flooring having metallic reinforcing members extending lengthwise of the flooring and across the buttresses."

Ambursen's contribution to the art consisted in making the Austin dam of concrete instead of masonry and turning it around so that the vertical surface faces down stream and the slanting surface becomes the floor, so to speak, upon which the water of the reservoir rests which is piled up behind the dam. The weight and downward pressure of this water tends to hold the dam in place. This was a perfectly obvious thing to do. Anyone with the slightest knowledge of hydraulics would know that the imprisoned water would produce less pressure on the dam if the water pressed downward and outward instead of outward alone. The feature which has given popularity and strength to the complainant's structures is the use of concrete. This substance being a modern discovery, its efficiency in the various building trades has been a matter of slow development because of the doubt as to its durability, and its ability to resist certain strains. This was particularly so in dam construction where its use had it proved inadequate, would have resulted in enormous loss of life and property. But as time went on and its safe substitution for building materials then in use was demonstrated, it naturally occurred to dam builders to use it in their business. Ambursen invented no new principle of dam build-

ing. Every feature of construction which he uses had been used before in the construction of dams built of wood, stone and steel. If the mere substitution of concrete for stone in the building of a dam involves invention, it follows that each person in the future who substitutes it for other materials in well-known structures is entitled to a monopoly of that use. It is not easy to mention any structure in the building art where concrete is not used to-day. If it be assumed that concrete has not as yet been used in the construction of church pulpits, the architect who first builds a concrete pulpit will, upon the complainant's theory, be entitled to a patent. We do not so understand the law, the new pulpit performs the same office as the prior wood and stone pulpits. It may be less expensive and more durable than its predecessor, but it performs the old functions in the old way. It is said that the decision of this court in Frost Co. v. Cohn, 119 Fed. 505, 56 C. C. A. 185, is directly in point and that the Ambursen patent should be sustained upon the strength of that authority. We think this contention is not well founded. The Gorton invention, by substituting a rubber button, or one having a yielding or elastic surface, for the metal buttons of the prior art succeeded in keeping the hose of the wearer in proper position, whereas the metal buttons previously in use not only tore the fabric but failed to keep the stocking in place. The cases would be parallel if Gorton had substituted a celluloid button for the metal button of the prior art. The substitution of concrete for stone and wood accomplishes no new result. Ambursen's dam works upon precisely the same principles as the prior wood, stone and steel dams. Concrete performs no function that is not performed by the material of the prior dams.

We cannot resist the conclusion that Ambursen has merely substituted one well-known building material for another with no change except such as is inherent in the material which was well known and free to all builders.

The decree is affirmed.